## CAREY *v.* THE STATE.

There was in the present case a fatal variance between the allegata and the probata, and consequently the verdict of guilty was unwarranted.

Argued November 19,—Decided November 27, 1900.

Indictment for obtaining goods and money on false writing. Before Judge Henry.   Floyd superior court.   September 17, 1900.

*Henry Walker* and *Harper Hamilton*, for plaintiff in error.
*Moses Wright, solicitor-general*, contra.

LUMPKIN, P. J.   The plaintiff in error was in the trial court convicted upon the second count of an indictment charging him

with obtaining from one Hardin, "a clerk for Kay & Brother, who acted for them," money and goods of value, by color of a counterfeit writing made "in the fictitious name of J. B. Reynolds," with intent to defraud the said Kay & Brother. The writing set forth in the indictment was in the following words and figures :

Rome, Ga., Mch. 10, 1900.

Recd. from First National Bank of Rome fifteen dollars.

J. B. Reynolds.

(2 cents revenue stamp cancelled by J. B. R. Mch. 10, 1900.)

On the trial the State introduced in evidence a writing upon the face of which was the following:

Rome, Ga., . . . . March 10, 1900 . . . . . 190 . . .

If this receipt is presented by any other than the drawer, it will require a 2-cent revenue stamp.

Received from First National Bank of Rome $15.00

Fifteen . . . . . . . . . . . . . . . . . . $\frac{00}{0}$ . . Dollars.

Fletcher Smith, Pr., Rome, Ga.　　　　　　J. B. Reynolds.

Affixed to the writing was a two-cent revenue stamp, cancelled with the initials "J. B. R.," and having written across it the date "March 10, 1900." Upon the back of this paper appeared the name: "W. C. Carey." The only evidence introduced at the trial which tended to show that Kay & Brother were defrauded of any money or goods was to the following effect: The accused presented to Hardin, their clerk, the above-mentioned paper just as it appeared when introduced in evidence, save that the same when so presented had no name on the back of it and the revenue stamp had not then been affixed to it. The accused requested of Hardin an advance of goods and money thereon. Hardin positively refused to comply with this request, saying to the accused that the paper "was no good — just a receipt." Thereupon the accused wrote his name across the back of the paper, affixed to it the revenue stamp, and cancelled the same. He then told Hardin that the paper thus stamped and indorsed was the equivalent of a check, and would be good at the bank, where Reynolds had money on deposit. Hardin then agreed to ship a specified quantity of whisky to Reynolds, of the value of $5.25, and paid to the accused $9.75 in cash. The State also introduced evidence tending to show that the paper presented by the accused was not signed by Reynolds, but was a fictitious document.

We are confidently of the opinion that the evidence upon which the State relied for a conviction did not support the charge made in the indictment. Granting that the case was fully made out as to the element of fictitiousness, the evidence entirely failed to show that Kay & Brother were defrauded in the manner set forth in the indictment. The charge therein contained was, in essence, simply that Hardin, the employee of Kay & Brother, was deceived by the presentation to him of an unindorsed paper, in the form of a receipt, and that, as a consequence, the accused fraudulently obtained from him property and money belonging to his employers. As will have been seen, the evidence plainly and positively shows that Hardin was not deceived in any such manner. On the contrary, he declined to extend any credit whatever on the paper as originally presented to him, expressing the opinion that the paper in that shape was utterly worthless. He was deceived by the conduct of the accused in stamping and indorsing the paper and in that connection representing that it was thus converted into a check which would be honored at the bank. It requires no argument to prove that the deceit thus practiced was not even hinted at in the indictment, and consequently there was a fatal variance between the allegata and the probata.

*Judgment reversed. All the Justices concurring.*